Prob 12C
(Rev. 3/95 D/HI)

ORIGINAL   SEALED
BY ORDER OF THE COURT

# SEALED BY ORDER OF THE COURT

## United States District Court

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

### for the

### DISTRICT OF HAWAII

at ____ o'clock and ____ min. ____ M.

NOV 20 2007

SUE BEITIA, CLERK

U.S.A. vs. __JAMES BOHOL, aka "Special K"__    Docket No. __CR 02-00523HG-03__

### REQUEST FOR COURSE OF ACTION
### (Statement of Alleged Violations of Supervised Release)

COMES NOW DEREK M. KIM, SENIOR PROBATION OFFICER OF THE COURT, presenting an official report upon the conduct and attitude of James Bohol, aka "Special K," who was placed on supervised release by the Honorable Helen Gillmor, sitting in the Court at Honolulu, Hawaii, on the 15th day of March, 2004, who fixed the period of supervision at 5 years, and imposed the general terms and conditions theretofore adopted by the Court and also imposed special conditions and terms as follows:

1. That the defendant participate in a substance abuse program, which may include drug testing at the discretion and direction of the Probation Office.

2. That the defendant is prohibited from possessing any illegal or dangerous weapons.

3. That the defendant provide the Probation Office access to any requested financial information.

4. That the defendant shall submit his person, residence, place of employment, or vehicle to a search conducted by the U.S. Probation Office at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of supervision. Failure to submit to a search may be grounds for revocation. The defendant shall warn any other resident that the premises may be subject to search pursuant to this condition.

### RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:

Alleged Violation(s) of Supervised Release

That the offender has violated the conditions of his supervised release (Judgment in a Criminal Case is attached) as follows:

1. The offender failed to follow the Probation Officer's 2/16/2007 instruction to find employment, in violation of Standard Condition No. 3.

2. The offender failed to follow the Probation Officer's 2/28/2007 instruction to notify of his place of residence, in violation of Standard Condition No. 3.

Prob 12C
(Rev. 3/95 D/HI)

2

3.   The offender failed to follow the Probation Officer's 4/13/2007 instruction regarding employment search, in violation of Standard Condition No. 3.

4.   The offender refused to submit to drug testing as part of substance abuse treatment on 6/26/2007 and 7/29/2007, in violation of Special Condition No. 1.

5.   The offender failed to immediately notify the Probation Officer of his change of residence on 8/19/2007, in violation of Standard Condition No. 6.

Based on the above, the U.S. Probation Officer recommends that a NO BAIL Warrant be issued and that the offender be brought before the Court to show cause why supervision should not be revoked.

===

PRAYING THAT THE COURT WILL ORDER ONE OF THE FOLLOWING COURSES OF ACTION:

[✓]   The issuance of a No Bail Warrant and that the offender be brought before the Court to show cause why supervision should not be revoked. The NO BAIL Warrant and the Petition to be sealed for other than law enforcement purposes and until such time that the offender has been arrested and the warrant duly executed.

[  ]   Other

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   11/14/2007

DEREK M. KIM
Senior U.S. Probation Officer

Approved by:

GENE DeMELLO, JR.
Supervising U.S. Probation Officer

Prob 12C
(Rev. 3/95 D/HI)

## ORDER OF COURT

THE COURT ORDERS the issuance of a NO BAIL Warrant and that the offender be brought before the Court to show cause why supervision should not be revoked. The NO BAIL Warrant and the Petition to be sealed for other than law enforcement purposes and until such time that the offender has been arrested and the warrant duly executed.

Considered and ordered this 14th day of November 2007, and ordered filed and made a part of the records in the above case.

HELEN GILLMOR
Chief U.S. District Judge

Re:    **BOHOL, James, aka "Special K"**
       **Criminal No. CR 02-00523HG-03**
       **REVOCATION OF SUPERVISED RELEASE**

## STATEMENT OF FACTS

On 3/15/2004, the offender was sentenced to 65 months imprisonment after having been convicted of Conspiracy to Distribute and Possess With Intent to Distribute 50 Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), a Class A felony.

On 8/22/2006, the offender was transitioned to Mahoney Hale, a residential reentry center contracted with the U.S. Bureau of Prisons. On 1/10/2007, this officer met with Mahoney Hale staff to discuss the offender's release plan for his eventual 2/16/2007 release. Mahoney Hale advised this officer that the offender had refused to provide a release plan address. Mahoney Hale further advised the offender did not intend to provide a release address until he reported to the Probation Office within 72 hours after his release from Mahoney Hale. Additionally, the offender refused to meet with this officer at Mahoney Hale on 1/22/2007 for prerelease purposes. Consequently, a prerelease investigation could not be completed.

On his release date of 2/16/2007, this officer proceeded to Mahoney Hale. Upon his release from the facility, this officer met the offender and advised him that his supervision had officially commenced. Thereafter, this officer instructed the offender to report to the Probation Office that morning.

Since the commencement of his supervised release on 2/16/2007, the offender's adjustment in the community has been poor at best. In this regard, the offender has not attempted to find employment, has relied on food stamps and income assistance from the State of Hawaii, and is homeless. To aggravate his situation, the offender claims he has medical conditions which prevent him from working and finding employment.

Consequently, the offender's violations within the past 9 months include the following:

### Violation No. 1 - Failure to Follow the Probation Officer's 2/16/2007 Instruction to Find Employment:

During the offender's 2/16/2007 orientation at the Probation Office, this officer questioned the offender regarding his unemployment status while at Mahoney Hale from 8/22/2006 to 2/16/2007. The offender indicated that he applied for employment while at Mahoney Hale, but was never hired because of his felony status. After further discussion regarding the matter, the offender reported that he had several lawsuits against various governmental agencies as well as a prior employer. Thereafter, this officer questioned the offender as to whether he ever disclosed this fact to the prospective employers. The offender confirmed that he did because he wanted to make sure that if he was not hired, the prospective employer would be required to

Re:   **BOHOL, James, aka "Special K"**
      **Criminal No. CR 02-00523HG-03**
      **REVOCATION OF SUPERVISED RELEASE**
      **STATEMENT OF FACTS - Page 2**

return his job application and/or resume. The offender further reported that he did not provide certain personal information, including his social security number, on employment applications.

Thereafter, this officer showed the offender a Verification of Employment Contacts sheets and the Probation Officer's Instructions document which contained instructions to find employment. This officer explained that the offender would be required to apply at four different businesses on a daily basis, Monday through Friday, until he secured employment. This officer also advised the offender that if he failed to secure employment by the end of 8 weeks, this officer would move the Court to impose community service until employment was secured. Consequently, the offender reported that he would be employed within a month and that he had contacts within the community who would employ him. Subsequently, this officer instructed the offender to secure employment within a month. The Verification of Employment Contacts sheets and Probation Officer's Instructions document were temporarily deferred based on the offender's claim.

Since his release on 2/16/2007, the offender has not been employed.

**Violation No. 2 - Failure to Follow the Probation Officer's 2/28/2007**
**Instruction to Notify of His Place of Residence:**

On 2/16/2007, this officer questioned the offender as to his intended place of residence. The offender reported that he would reside with his girlfriend and daughter, and his girlfriend's family in Kaneohe. In this regard, the offender provided the names of his girlfriend and daughter, the address and telephone number of the residence, and his girlfriend's cellular telephone number.

However, on 2/21/2007, the offender left a telephone message indicating that he was "having problems with [his] housing situation." In this regard, the offender reported that his "[W]ife's family may not want him back." The offender further reported that he "may stay" at his cousin's residence.

On 2/28/2007, this officer questioned the offender regarding his residence. The offender related that he slept in his girlfriend's vehicle which he parked at a cousin's or friend's house. When the offender could not provide the specific residence addresses of his cousin and friend, this officer instructed him to contact this officer the same day with the addresses. The offender did not provide an address until 3/1/2007.

Consequently, the offender's whereabouts were unknown from 2/16/2007 until 3/1/2007.

Re:   **BOHOL, James, aka "Special K"**
**Criminal No. CR 02-00523HG-03**
**REVOCATION OF SUPERVISED RELEASE**
**STATEMENT OF FACTS - Page 3**


**Violation No. 3 - Failure to Follow the Probation Officer's 4/13/2007
Instruction Regarding Employment Search:**

On 4/13/2007, the offender was provided with Verification of Employment
Contacts sheets and the Probation Officer's Instructions document which instructed him
to personally make four employment inquiries per day, Monday through Friday,
beginning 4/16/2007. In addition, the offender was instructed to document his efforts
on the Verification of Employment Contacts sheets which would allow this officer to
verify his attempts to secure employment. The offender was further advised that drug
treatment and/or medical treatment sessions were not included as an employment
contact, but that "call-backs" for interviews were counted as an additional employment
contact. The offender was advised that if he was not employed for at least 40 hours per
week by 6/11/2007, this officer would request the Court to impose community service
until he found employment that satisfied 40 hours per week. The offender understood
this officer's instructions and agreed to commence job seeking. However, he executed
the Probation Officer's Instructions document "Signed Under Duress" so that he could
"preserve his right on appeal." The Probation Officer's Instructions document is
identified as EXHIBIT A.

Between 4/16/2007 and 6/11/2007, the offender reported the following regarding
his employment attempts:

| Week | Dates | # of Required Contacts | # of Reported Contacts | # of Accepted Contacts |
|------|-------|------------------------|------------------------|------------------------|
| 1 | 4/16/07 to 4/20/07 | 20 | 18* | 2** |
| 2 | 4/23/07 to 4/27/07 | 20 | 13 | 5 |
| 3 | 4/30/07 to 5/4/07 | 20 | 10 | 1 |
| 4 | 5/7/07 to 5/11/07 | 20 | 10 | 1 |
| 5 | 5/14/07 to 5/18/07 | 20 | 8 | 1 |
| 6 | 5/21/07 to 5/25/07 | 20 | 9 | 0*** |
| 7 | 5/28/07 to 6/1/07 | 20 | 8 | 0 |
| 8 | 6/4/07 to 6/8/07 | 20 | 10 | 0 |

*"Reported Contacts" refers to the number of contacts identified by the offender on his
Verification of Employment Contacts sheets. In this regard, the offender included his
medical appointments, substance abuse treatment/testing appointments, appointments
for state benefits, and other non-acceptable contacts, including Oahu Work Links to
check on ads for employment.

Re:    **BOHOL, James, aka "Special K"**
       **Criminal No. CR 02-00523HG-03**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 4**

\*\*"Accepted Contacts" do not include those employment contacts (2), which the offender refused to provide his social security number.

\*\*\*"Accepted Contacts" do not include an employment contact which the offender provided a "redacted" resume.

Consequently, while the offender was required to make 160 employment contacts within 8 weeks, he made 10 acceptable contacts. A copy of the Verification of Employment Contacts sheets is identified as EXHIBIT B. A closer review of the submitted documents suggests the offender was not interested in securing employment. For example, while the offender went to WalMart on 4/20/2007, he "refused to give" his resume because it requested his social security number. Additionally, while the offender went to Macy's and Nieman Marcus on 4/24/2007, he noted that he "will not get hired" because they conduct background checks. Additionally, while the offender went to Paradise Cove Luau on 5/25/2007, he "[l]eft [a] redacted resume with [an] individual who has already been contacted by some Fed Employee." The offender's comments noted above infers that at most, he was attempting to comply with the job search requirement but really had no intent on securing employment.

Based upon the offender's submitted Verification of Employment Contacts sheets for the period 4/16/2007 to 6/11/2007, the offender failed to follow this officer's 4/13/2007 instruction to find employment.

## Violation No. 4 - Refusal to Submit to Drug Testing as Part of Substance Abuse Treatment on 6/26/2007 and 7/29/2007:

During the offender's 2/16/2007 orientation at the Probation Office, this officer explained the drug testing and drug treatment phases to the offender. The offender was also advised that if he failed to submit to drug testing and/or failed to attend drug treatment without a valid excuse, his failure would constitute a refusal to submit to drug testing and/or drug treatment.

The offender's participation in substance abuse treatment and testing commenced on 2/28/2007 at Freedom Recovery Services, Inc. (FRS).

On 6/26/2007, the offender left a telephone message for this officer that he had "missed" his "UA" at FRS. On 6/27/2007, FRS confirmed the offender failed to report for drug testing on 6/26/2007. The offender could not be required to submit to drug testing on 6/27/2007 given that he was scheduled for day surgery for his sinuses.

On 7/30/2007, FRS informed this officer that the offender failed to report for drug testing on 7/29/2007. On 8/3/2007, the offender left a telephone message confirming that he had "missed" his "UA" on 7/29/2007. He further reported that he had only learned on 8/2/2007 that he had drug testing on 7/29/2007.

Re:   **BOHOL, James, aka "Special K"**
      **Criminal No. CR 02-00523HG-03**
      **REVOCATION OF SUPERVISED RELEASE**
      **STATEMENT OF FACTS - Page 5**

### Violation No. 5 - Failure to Immediately Notify the Probation Officer of His Change of Residence on 8/19/2007:

From approximately 3/1/2007, the offender had been residing with a friend and his family in the Papakolea area of Honolulu. On 8/16/2007, the offender left a telephone message indicating that he "needs to move." He did not provide further details as to when and where. Additionally, the offender reported that he no longer had his cellular telephone because he dropped it in water.

On 8/22/2007, this officer attempted to meet with the offender at his reported residence in Papakolea. The offender's friend/homeowner reported that the offender was not home.

On 9/13/2007, this officer again attempted to meet the offender at his reported residence in Papakolea. The offender's friend/homeowner reported that the offender was not home. When questioned further, the offender's friend/homeowner indicated that the offender did not come home the evening before.

Subsequently, this officer reviewed the offender's August 2007 Monthly Supervision Report (MSR) which was received on 9/5/2007. According to the MSR, the offender moved on 8/19/2007, but did not list an address, telephone number, or any other means of contact. A copy of the MSR is identified as EXHIBIT C.

Based upon the offender's August 2007 MSR, the offender should have notified this officer by telephone on 8/19/2007 that he moved from the Papakolea residence.

### ANALYSIS

In response to the noted violations, the offender has claimed that he has been compliant with all of the conditions of supervision, including his attempts to find employment. In support of his claim, he has contended that: 1) he has sleep apnea and back and neck pain to the extent that it renders him unemployable and unable to attempt to find employment; 2) his medical doctors have submitted medical certificates that excuse him from employment and employment search; 3) even if employable, employers do not hire felons; and 4) there is a concentrated effort or conspiracy by the government, including the Court and this officer, and the Honolulu Police Department, to return him to prison.

It has not been established that the offender has a legitimate, debilitating medical condition which will excuse him from becoming employed or from even having to find employment. Rather, for the past 9 months on supervision, the offender was: 1) living on monthly food stamps and income assistance benefits; 2) chauffeuring his girlfriend to and from work and his daughter to and from soccer; 3) fishing during the evenings; and 4) cruising in his girlfriend's vehicle.

Re:   **BOHOL, James, aka "Special K"**
      **Criminal No. CR 02-00523HG-03**
      **REVOCATION OF SUPERVISED RELEASE**
      **STATEMENT OF FACTS - Page 6**

However, these activities itself suggest the offender is able to work and/or find employment and that his medical conditions are not debilitating.  Moreover, the following documentation and information contradicts any suggestion that the offender is unemployable and/or unable to attempt to find employment due to his medical conditions:

A.    BUREAU OF PRISON REPORT (6/29/2006)

On 7/31/2006, the Probation Office received a 6/29/2006 Progress Report from the Federal Correctional Institution (FCI) Sheridan where the offender had been incarcerated since 2/9/2005.  According to the report, the offender was working in the facility's education department and had previous work assignments in the dining room, as an orderly, as a grounds crew member, and as a food service worker.  Additionally, with respect to his physical and mental health, FCI Sheridan reported that the offender was assigned to regular duty with a medical restriction for a lower bed because he had a C-Pap breathing machine and he had previously fallen from a top bunk.  Moreover, FCI Sheridan reported that while the offender was considered to be mentally ill, he was "fully employable upon his release."  A copy of the Progress Report dated 6/29/2007 is identified as EXHIBIT D.

B.    PROCESS FOR SUPERVISION (2/16/2007)

On 2/16/2007, the offender was processed for supervision after having been released the same day from Mahoney Hale.  During the meeting, this officer showed the offender a set of Verification of Employment Contacts sheets with a Probation Officer's Instructions document.  This officer initially inserted "2/19/2007" as the date the offender would be required to find employment within 8 weeks.  After further discussion, this officer decided to withhold the structured employment procedure after the offender reported that he had contacts within the community to become employed within 1 month.  Based on the offender's statements, this officer instructed the offender to find employment within 1 month.  The offender assured this officer that it would not be a problem.  A copy of the Probation Officer's Instructions document is identified as EXHIBIT A.

Additionally, this officer questioned the offender as to whether he was on medication, whether he had any allergies, and whether he had medical conditions which this officer should be aware of.  The offender did not report any prescription medication or allergies, but did report that he had sleep apnea which was being treated.

C.    MAHONEY HALE TERMINATION REPORT (2/25/2007)

On 2/26/2007, this officer received a Termination Report from Mahoney Hale dated 2/25/2007.  According to the report, prospective employers would not accept the offender's job applications because the offender would not complete the applications in detail.  Moreover, the offender would inform prospective employers during interviews

Re:   **BOHOL, James, aka "Special K"**
     **Criminal No. CR 02-00523HG-03**
     **REVOCATION OF SUPERVISED RELEASE**
     **STATEMENT OF FACTS - Page 7**

that he was pursuing a lawsuit against his former employer and the federal government. A copy of the Termination Report dated 2/25/2007 is identified as EXHIBIT E.

   D.   PHYSICIANS' RESPONSES

   On 6/12/2007, the offender reported to the Probation Office as instructed. This officer informed the offender that he was in violation of his supervision for failing to follow this officer's instructions to look for full-time employment at four different businesses each day, 5 days per week. When questioned, the offender reported that he had medical problems, including back pain and sleep apnea which prevented him from doing much. Thereafter, this officer informed the offender that this officer would contact his physicians to determine whether his medical conditions and/or medical care prohibited him from employment. Additionally, if he was able to work, information as to limitations would be requested. Consequently, request for information via letter or verbal response was sent to Baron Ching, M.D. (primary care physician), Gene Doo, M.D. (sleep apnea), Robert Peroff, M.D. (sleep apnea), and Thomas Drazin (neurologist/back-neck pain). A copy of one of the request letters is identified as EXHIBIT F.

   While Dr. Doo responded by providing medical records only, Dr. Peroff provided a letter dated 6/29/2007 which indicated the offender had surgery on 6/13/2007 to address his sleep apnea. Subsequently, the offender submitted "Disability Certificate" from Dr. Peroff for the period 6/13/2007 to 6/27/2007, and 6/29/2007 to 7/22/2007.

   Additionally, on 6/27/2007, this officer contacted Dr. Drazin's office and spoke to Dr. Drazin through a staff member who was relaying this officer's questions. In summary, this officer was informed that the offender was seen on multiple occasions between February 2007 and June 2007 for his reported headaches and back and neck pain. However, Dr. Drazin reported that he would no longer see the offender because his source of pain was "unidentified" and the offender did not have a neurological disorder. Moreover, Dr. Drazin reported that the offender was able to work without any restrictions. When questioned as to whether he believed the offender was seeking treatment "under false pretenses" to avoid employment, Dr. Drazin reported that he would "not comment" on the matter.

   On 7/9/2007, the offender's primary care physician, Dr. Ching, provided medical records in lieu of a brief letter or verbal response. Because this officer could not understand the medical documents, including his medical notes, this officer contacted Dr. Ching's office on 9/19/2007. During the conversation with a staff member, this officer advised the staff member that this officer needed to speak with Dr. Ching concerning the authenticity of the medical certificates this officer was receiving and the diagnosis/prognosis regarding the offender's reported neck and back pain. This officer further noted that while it would appear "normal" for someone to see their primary care physician on a regular basis, the offender was seen by Dr. Ching on at least 13 occasions between 1/9/2007 and 7/2/2007, with at least 2 visits each month.

Re:    **BOHOL, James, aka "Special K"**
       **Criminal No. CR 02-00523HG-03**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 8**

Dr. Ching did not contact this officer but the offender continues to submit monthly "Certificate of Return to Work/School" slips each month. A copy of these certificates are identified as EXHIBIT G.

Consequently, based upon Dr. Peroff's letter and the "Disability Certificates" which ended on 7/22/2007, the offender should have been employable thereafter. Moreover, based upon Dr. Drazin's comments concerning the offender's headaches and back and neck pain, the offender should have been employable since 6/27/2007, but no later than sometime after 7/22/2007.

E.    OFFICE VISIT (10/1/2007)

On 10/1/2007, the offender reported to the Probation Office as instructed. This officer advised the offender of his concern that he continued to be unemployed and without a reported residence. Upon questioning, the offender reported that he usually slept in his girlfriend's GMC Envoy at Heeia Pier in Kaneohe because it allowed him to "throw out [his] fishing pole." He further reported that at times, he also slept in the GMC Envoy in a friend's driveway or a shopping mall parking lot.

Thereafter, the offender reported that he "heard" this officer was "doubting" his medical condition. This officer advised the offender that while his sleep apnea condition had been addressed, some of his medical certificates from Dr. Ching lacked a diagnosis. Also, when a diagnosis appeared in a certificate, the diagnosis could not be substantiated by medical testing or examinations. Additionally, this officer advised the offender that Dr. Ching was uncooperative in addressing this officer's concerns/questions. Moreover, this officer advised the offender that since the start of supervision in February 2007, the offender never complained of back and neck pain to this officer, never complained of back and neck pain to his substance abuse counselors despite having to sit in drug treatment, and only started mentioning his ailments when this officer structured his employment search by requiring him to find employment with the Verification of Employment Contacts sheets. The offender subsequently told this officer not to "fuck with" him. This officer advised the offender that the meeting was over. He was then instructed to wait in the waiting room for a non-treatment drug test pursuant to the Violent Control Crimes Act.

F.    SURVEILLANCE (10/1/2007 to 11/3/2007)

Commencing on 10/1/2007 and ending on 11/3/2007, several surveillance operations were conducted to determine the following: 1) where the offender resided/showered; and 2) whether the offender was disabled to the extent that he could not be employed and/or attempt to find employment.

On 10/1/2007, the offender was followed and observed as he walked from the Probation Office to The Queen's Medical Center. The offender was also observed to

Re:    **BOHOL, James, aka "Special K"**
       **Criminal No. CR 02-00523HG-03**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 9**

walk briskly and without hesitation or the appearance of uncomfortableness or pain during the approximate .8 mile walk.

On the evening of 10/1/2007 between 8:45 p.m. and 11:00 p.m., the offender's vehicle did not enter the parking lot to Heeia Pier where he reportedly slept.

On 10/16/2007 at approximately 4:50 a.m., the offender was observed to be sleeping in the GMC Envoy parked behind an abandoned Island Mini-Mart located on Kamehameha Highway in Kaneohe. Thereafter, the offender was observed leaving the mini-mart at approximately 5:30 a.m., and observed leaving his girlfriend's Namoku Place residence at approximately 6:20 a.m. Due to the offender driving at a high rate of speed, a visual on his vehicle was lost on Kamehameha Highway, Kailua-bound.

At approximately 6:45 a.m., the offender was observed dropping off his girlfriend at The Queen's Medical Center. Thereafter, while driving on South Beretania, Ewa-bound, the offender sped off. At approximately 8:15 a.m., the offender was observed to be parked at Magic Island inside of Ala Moana Beach Park. The offender was observed sitting in the GMC Envoy for the most part before he moved his vehicle toward an unidentified male with whom he began communicating. At approximately 8:55 a.m., the offender left Ala Moana Beach Park and headed toward McCully. He subsequently entered the parking lot to the First Interstate Building between Young and South King Streets. At approximately 10:25 a.m., the offender exited the parking garage and headed towards Chinatown via South Beretania Street then to North King Street, Dillingham Boulevard, and then to Waiakamilo. During such time, the offender was observed accelerating and slowing down at various but inappropriate times, activating his turn signals without turning, and turning abruptly without activating his turn signals.

On 10/24/2007 at approximately 4:20 p.m., the offender was observed driving to Benjamin Parker Elementary School. At approximately 4:25 p.m., he exited the GMC Envoy and walked up to another unidentified male near the soccer field. The unidentified male appeared to be the soccer coach of the offender's daughter as he was carrying soccer equipment. At approximately 4:40 p.m., the offender returned to the GMC Envoy and drove off toward Windward Mall with his girlfriend sitting in the passenger seat. The offender was then observed returning back to the soccer field at Benjamin Parker Elementary School at approximately 5:30 p.m.

On 11/3/2007 at approximately 10:31 a.m., the offender was observed entering the back entrance to Kaneohe Elementary School. The offender subsequently parked the GMC Envoy in the single, handicapped stall. Thereafter, the offender's daughter and girlfriend exited the vehicle while the offender remained in the driver's seat. At approximately 11:44 a.m., the offender started to back out of the handicapped stall. It did not appear the offender had difficulty backing out as he would turn his head both to the left and right as he reversed. Thereafter, he proceeded out of the parking lot, but returned at approximately 11:55 a.m. and parked in the single, handicapped stall. He

Re:    **BOHOL, James, aka "Special K"**
       **Criminal No. CR 02-00523HG-03**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 10**

then exited the vehicle and delivered multiple food bags from McDonald's to his girlfriend near the soccer field. The offender was also observed bending over at various times while watching his daughter's soccer game. This officer subsequently asked an unknown parent to walk past the GMC Envoy to determine whether it had a handicap placard. Thereafter, the parent gave a "thumbs down" sign indicating the GMC Envoy did not have a handicap placard to park in the reserved parking stall. Several minutes later, the offender returned and entered the GMC Envoy. At approximately 12:05 p.m., the offender was observed backing the GMC Envoy. The offender turned his head from left to right and back while reversing out of the stall. He then parked further away from the soccer field. At approximately 12:16 p.m., the offender's girlfriend was observed returning back to the GMC Envoy. The offender then exited the GMC Envoy, retreated to the back of the vehicle, and extended his hands above his head as he lifted the back hatch to let his girlfriend place a cooler inside the vehicle. Thereafter, the offender was observed to reach up with his hands above his head, to slam the back hatch down. The offender subsequently entered the vehicle and left the parking lot at approximately 12:17 p.m.

At no time during any of the surveillance operations on the dates noted above did it appear to the participating Probation Officers that the offender had difficulty moving, walking, standing, or otherwise. Moreover, it did not appear facially and/or movement-wise that the offender was suffering from pain or discomfort while standing, walking, bending, sitting in the vehicle, hanging out of the vehicle, driving the vehicle, and/or pulling up or pulling down the rear gate of his vehicle.

G. REPORTED MILEAGE

The offender's term of supervised release commenced on 2/16/2007. Based upon his submitted Monthly Supervision Reports (MSRs), his self-reports to this officer, and the various surveillance operations, it is apparent that while the offender's girlfriend is the registered owner of the GMC Envoy, the offender solely possesses and operates the vehicle.

This appears to contradict the offender's suggestion that he is disabled to the point where he is physically unable to secure employment and/or is in no position to even look for employment. Specifically, despite the self-reported severity of his medical disabilities, the offender's MSRs reveal that he has the physical ability to incur tremendous mileage on the GMC Envoy.

Re:    **BOHOL, James, aka "Special K"**
       **Criminal No. CR 02-00523HG-03**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 11**

| MSR MONTH | REPORTED MILEAGE | MILES DRIVEN BETWEEN MONTHS |
|---|---|---|
| FEBRUARY 2007 | 48,900? | |
| MARCH 2007 | 50,200+ | 1,300+ |
| APRIL 2007 | 51,700+ | 1,500+ |
| MAY 2007 | 53,880 | 2,180+ |
| JUNE 2007 | 55,200+ | 1,320+ |
| JULY 2007 | 57,000+ | 1,800+ |
| AUGUST 2007 | 59,000+ | 2,000+ |
| SEPTEMBER 2007 | 61,400+ | 2,400+ |
| OCTOBER 2007 | 63,600+ | 2,200+ |

Based upon the offender's self-reported mileage on his MSRs, he has driven more than 14,700 miles in less than 9 months. While this officer is aware that the offender "resides" near his girlfriend's residence and drives her to work at The Queen's Medical Center each morning, 5 days per week, and picks her up after work and drives her home, the amount of mileage incurred for the approximately 23 working days per month is no more than 575 miles per month, or 25 miles per day according to the website, MapQuest.

What is unknown is where the offender is driving otherwise. For example, if the offender drove 2,200 miles between September 2007 and October 2007, he at least drove 575 miles during that same period to take his girlfriend to work and back each day. What this officer is unaware of is how he incurred the remaining 1,625 miles during the same period.

A copy of the offender's MSRs is identified as EXHIBIT H.

H.    DEPARTMENT OF HUMAN SERVICES RECORDS (11/8/2007)

On 11/8/2007, this officer received the Transaction History of the offender's food stamp and income assistance benefits from the Department of Human Services, State of Hawaii. According to the Transaction History, the offender commenced receiving benefits as early as 5/9/2007. In this regard, the offender received monthly food stamps in the amount of $156 to $303 and monthly income assistance in the amount of $418 to $529. This officer's summary of the Transaction History is identified as EXHIBIT I. A copy of the Transaction History is identified as EXHIBIT J.

Re:  **BOHOL, James, aka "Special K"**
     **Criminal No. CR 02-00523HG-03**
     **REVOCATION OF SUPERVISED RELEASE**
     **STATEMENT OF FACTS - Page 12**


According to both documents, it is apparent that the offender is physically able to drive to various banks, markets, and grocery stores to purchase food, withdraw cash, and/or make balance inquiries.  More importantly, it is apparent that the offender is physically able to conduct transactions on various days of the week and during various times of the day, including multiple transactions on the same day and multiple transactions on the same day at multiple sites.  Additionally, an analysis of the 118 separate transactions reveals the offender made the following number of transactions during the following time frames:

| TIME FRAME | NUMBER OF TRANSACTIONS |
|---|---|
| 6:00 A.M. TO 12 NOON | 36 |
| 12 NOON TO 6:00 P.M. | 48 |
| 6:00 P.M. TO 12 MIDNIGHT | 29 |
| 12 MIDNIGHT TO 6:00 A.M. | 5 |

Consequently, the overwhelming majority of transactions (84) occurred during the daylight hours when the offender was required to find employment and should have been employed.  However, the offender was still able to conduct at least 29 transactions during the evening and at least 5 transactions during the overnight hours.

In light of the foregoing, it is apparent that the offender's reported violations of supervision suggest that he is unwilling to follow the instructions of the Probation Officer.  It is also apparent that the offender's claim that his medical conditions render him unemployable and unable to attempt to find employment is frivolous in light of the reports from FCI Sheridan and Mahoney Hale, the medical information provided by Drs. Peroff and Drazin, and the direct observations of the offender in the community through surveillance.  Moreover, the submitted MSRs and the Department of Human Services records show that the offender is able to conduct normal bank transactions at various locations and at various times, make food purchases at various locations and at various times, and even operate a vehicle on a daily basis.  The offender's daily regimen includes driving his girlfriend to work in the morning, checking-in with his doctors, picking up food from various establishments, and then sitting in his vehicle until he picks his girlfriend up from work.  After taking her home, he picks up food and goes fishing before returning to pick his girlfriend up in the morning again.

Re:    **BOHOL, James, aka "Special K"**
       **Criminal No. CR 02-00523HG-03**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 13**


       Consequently, the offender's conduct indicates he is not amenable to supervision and is likely to continue to disregard the conditions of supervision. As such, the offender poses a significant risk to the community.

                                        Respectfully submitted by,



                                        _____
                                        DEREK M. KIM
                                        Senior U.S. Probation Officer


Approved by:



_____
GENE DeMELLO, JR.
Supervising U.S. Probation Officer

Date:  11/14/2007

DMK/pts

Re:   **BOHOL, James, aka "Special K"**
      **Criminal No. CR 02-00523HG-03**
      **REVOCATION OF SUPERVISED RELEASE**
      **STATEMENT OF FACTS - Page 14**

**NOTICE OF ADDITIONAL CONDITION(S) OF SUPERVISION THAT MAY WARRANT CONSIDERATION**

That the defendant provide an acceptable residence address to the Probation Officer prior to his release from imprisonment.  Otherwise, the offender shall reside at the Institute for Human Services and shall participate in all programs associated with the Institute for Human Services, until such time the Probation Officer accepts a suitable residence.

That the defendant be at his reported residence between 8:00 p.m. and 6:00 a.m. (curfew) for the first 6 months of supervision.

That the defendant shall maintain full-time, payrolled employment within 45 days from his release.  Otherwise, the offender shall perform community service of 20 hours per week until employed full-time.

That the defendant shall participate in a mental health program at the discretion and direction of the Probation Officer.

ORIGINAL

AO 245B (Rev. 8/96) Sheet 1 - Judgment    Criminal Case

# United States District Court

## District of Hawaii

MAR 22 2004
at 9 o'clock and ___ min. ___ M
WALTER A. Y. H. CHINN, CLERK

UNITED STATES OF AMERICA

v.

JAMES BOHOL, a.k.a. "Special K,"

'04 MAR 22 P3:50

U.S. PROBATION OFFICE
HONOLULU HAWAII

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number: 1:02CR00523-003

USM Number: 89137-022

Myles S. Breiner, Esq.
Defendant's Attorney

## THE DEFENDANT:

[✔]  pleaded guilty to count(s): 1 of the First Superseding Indictment .
[ ]  pleaded nolo contendere to counts(s) ___ which was accepted by the court.
[ ]  was found guilty on count(s) ___ after a plea of not guilty.

**Accordingly**, the court has adjudicated that the defendant is guilty of the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21 U.S.C. §§846, 841(a)(1) and 841(b)(1)(A) | Conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, its salts, isomers, or salts of its isomers, which contains cocaine base, a.k.a "crack cocaine," and cocaine, all Schedule II controlled substances | 12/04/2002 | 1 |

The defendant is sentenced as provided in pages 2 through 6 of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ]  The defendant has been found not guilty on counts(s) ___ and is discharged as to such count(s).

[ ]  Count(s) ___ (is)(are) dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

March 15, 2004
Date of Imposition of Judgment

Signature of Judicial Officer

**HELEN GILLMOR**, United States District Judge
Name & Title of Judicial Officer

3-21-04
Date

ATTEST: A True Copy
WALTER A.Y.H. CHINN
Clerk, United States District
Court, District of Hawaii

By _____
Deputy

AO 245B (Rev. 8/96) Sheet 2 - Imprisonment

CASE NUMBER:        1:02CR00523-003                                    Judgment - Page 2 of 6
DEFENDANT:          JAMES BOHOL, a.k.a. "Special K,"

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 65 MONTHS .

[✔]     The court makes the following recommendations to the Bureau of Prisons:
        FPC Nellis, NV, and in the alternative, FCI Lompoc, CA.
        That the defendant participate in drug treatment, educational and vocational training programs.

[✔]     The defendant is remanded to the custody of the United States Marshal.

[ ]     The defendant shall surrender to the United States Marshal for this district.
        [ ] at ___ on ___.
        [ ] as notified by the United States Marshal.

[ ]     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:
        [ ] before _ on ___.
        [ ] as notified by the United States Marshal.
        [ ] as notified by the Probation or Pretrial Services Officer.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

        Defendant delivered on_____ to _____

at _____ , with a certified copy of this judgment.


                                                        _____
                                                        UNITED STATES MARSHAL


                                        By      _____
                                                        Deputy U.S. Marshal

AO 245B (Rev. 8/96)  Sheet 3 - Supervised Release

CASE NUMBER:     1:02CR00523-003                              Judgment - Page 3 of 6
DEFENDANT:       JAMES BOHOL, a.k.a. "Special K,"

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of  5 YEARS .

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state, or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994:*

The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

[ ]      The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check if applicable.)

[✔]      The defendant shall not possess a firearm as defined in 18 U.S.C. § 921. (Check if applicable.)

If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).  The defendant shall also comply with the additional conditions on the attached page (if indicated below).

# STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without permission of the court or probation officer;
2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;
3)   the defendant shall answer truthfully all inquiries by the probation officer and follow instructions of the probation officer;
4)   the defendant shall support his or her dependants and meet other family responsibilities;
5)   the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;
6)   the defendant shall notify the probation officer ten days prior to any change in residence or employment;
7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)   the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B (Rev. 8/96)  Sheet 3 - Supervised Release

CASE NUMBER:          1:02CR00523-003                                        Judgment - Page 4 of 6
DEFENDANT:            JAMES BOHOL, a.k.a. "Special K,"

# SPECIAL CONDITIONS OF SUPERVISION

1.  That the defendant participate in a substance abuse program, which may include drug
    testing at the discretion and direction of the Probation Office.

2.  That the defendant is prohibited from possessing any illegal or dangerous weapons.

3.  That the defendant provide the Probation Office access to any requested financial
    information.

4.  That the defendant shall submit his person, residence, place of employment, or vehicle to
    a search conducted by the U. S. Probation Office at a reasonable time and in a reasonable
    manner, based upon reasonable suspicion of contraband or evidence of a violation of a
    condition of supervision.  Failure to submit to a search may be grounds for revocation.
    The defendant shall warn any other resident that the premises may be subject to search
    pursuant to this condition.

**ACKNOWLEDGMENT OF CONDITIONS**
I have read or have had read to me the conditions of
supervision set forth in this judgment and I fully understand
them. I have been provided a copy of them.
I understand that upon finding of a violation of probation or
supervised release, the Court may (1) revoke supervision,
(2) extend the term of supervision, and/or (3) modify the
conditions of supervision.

_____          Date 02/16/07
Defendant

_____          Date 2/16/07
United States Probation Officer

AO 245 S (Rev. 3/95) Sheet 5, Part B - Criminal Monetary Penalties

| | | Judgment - Page 5 of 6 |
|---|---|---|
| CASE NUMBER: | 1:02CR00523-003 | |
| DEFENDANT: | JAMES BOHOL, a.k.a. "Special K," | |

# CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the Schedule of Payments set forth on Sheet 5, Part B.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| Totals: | $ 100.00 | $ | $ |

[ ]  If applicable, restitution amount ordered pursuant to plea agreement .......... $_____

# FINE

The above fine includes costs of incarceration and/or supervision in the amount of $ _.

The defendant shall pay interest on any fine of more than $2500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. §3612(f). All of the payment options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g).

[ ]  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    [ ]  The interest requirement is waived.

    [ ]  The interest requirement is modified as follows:

# RESTITUTION

[ ]  The determination of restitution is deferred in a case brought under Chapters 109A, 100, 110A and 113A of Title 18 for offenses committed on or after 09/13/1994, until up to 60 days. An amended Judgment in a Criminal Case will be entered after such determination.

[ ]  The court modifies or waives interest on restitution as follows:

[ ]  The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order of percentage payment column below.

| Name of Payee | **Total Amount of Loss | Amount of Restitution Ordered | Priority Order or % of Pymnt |
|---|---|---|---|
| | | | |
| TOTALS: | $ _____ | $ _____ | |

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994.

AO 245 S (Rev. 3/95) Sheet 5, Part B - Criminal Monetary Penalties

CASE NUMBER:      1:02CR00523-003                                            Judgment - Page 6 of 6
DEFENDANT:        JAMES BOHOL, a.k.a. "Special K,"

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal; (4) cost of prosecution; (5) interest; (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A    [✔]  in full immediately; or

B    [ ]   $ _ immediately, balance due (in accordance with C, D, or E); or

C    [ ]   not later than _ ; or

D    [ ]   in installments to commence _ day(s) after the date of this judgment.  In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

E    [ ]   in _ (e.g. equal, weekly, monthly, quarterly) installments of $ _ over a period of _ year(s) to commence _ day(s) after the date of this judgment.


Special instructions regarding the payment of criminal monetary penalties:


[ ]    The defendant shall pay the cost of prosecution.


[ ]    The defendant shall forfeit the defendant's interest in the following property to the United States:


Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary payments are to be made as directed by the court, the probation officer, or the United States Attorney.